# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

NANCY STACHEWICZ,

     *Plaintiff,*

v.

CERTEGY PAYMENT
SOLUTIONS, LLC,

     *Defendant.*

Case No. 1:23-cv-01258-JEH-RLH

## ORDER & OPINION

     Nancy Stachewicz filed this putative class action under the Fair Credit Reporting Act in July 2023. Just shy of two years after filing, Nancy passed away. Her husband, John Stachewicz, now moves the Court to substitute him as the named plaintiff under Federal Rule of Civil Procedure 25.[1] Broadly stated, Rule 25 allows a non-party to assume the role of a party who has died, so long as (1) the deceased party's claims survive and (2) the proposed substitute is the "proper party" to take over the case. Fed. R. Civ. P. 25(a)(1).

     Defendant Certegy Payment Solutions, LLC ("Certegy") opposes the substitution. It argues that John's motion is procedurally defective, that Nancy's claims have been (partially) extinguished, and that John is not the right person to take Nancy's place. "Proving that few things are as simple as they seem," the issues raised by Certegy's opposition are "like threads unraveling a complicated and

---

[1] The Court refers to Nancy Stachewicz as "Nancy" and John Stachewicz as "John."

interwoven web of still other factual and legal issues." *Cole v. City of Chicago*, No. 1:06-cv-4704, 2009 WL 10737897, at *1 (N.D. Ill. Jan. 20, 2009).

For the reasons explained below, the Court rejects Certegy's procedural arguments, as well as its argument that Nancy's claims did not survive her death. That leaves only the question whether John is the right person to assume Nancy's role. Certegy argues that he lacks the competence to serve as a party in federal court and that he cannot represent Nancy's estate or a class. Were it to entertain these arguments, however, the Court would transform a simple procedural device into a contest over the merits of class certification and the logistics of trial. Because that contest is not appropriately fought on a Rule 25 motion, the substitution will be allowed.

## BACKGROUND

The rather complex and technical facts giving rise to this case are unnecessary to fully recount here. The Court instead outlines the basics. Certegy is a financial technology company that sells products and services to retailers around the country.[2] Among them is what Certegy calls its "check verification" service: When someone uses a check to buy goods from a retailer subscribed to the service, the retailer receives from Certegy a "near instantaneous recommendation"—based on the purchaser's financial history—whether the retailer should accept the check. (Doc. 40 at 8.)

The thrust of the Amended Complaint is that Certegy's procedures to ensure the accuracy of those recommendations are insufficient under the Fair Credit

---

[2] *About Certegy*, CERTEGY, https://certegy.com/about-us/about-certegy, (last visited Oct. 1, 2025).

Reporting Act (the "FCRA"). It alleges that Nancy attempted to make purchases via personal check at Big Lots, Kroger, and Dollar General—each of whom subscribe to Certegy's check verification service. (Doc. 16 at 3–4.) When Nancy presented her checks to those retailers, Certegy sent them a message about Nancy's credit that stated: "Negative Consumer or Check Data on File." (Doc. 16 at 6.) Relying on that message, the retailers refused to accept Nancy's checks. (Doc. 16 at 3–6.) The Amended Complaint alleges that this message was sent erroneously and that Nancy in fact had ample funds in her account to make the purchases. (Doc. 16 at 7.)

Discovery in this case commenced in late 2023. (*See* Doc. 19-1 at 2; Text Order Dated Nov. 15, 2023.) During the discovery process, Certegy twice sought to depose John but was met with objections from Nancy's counsel both times. Nancy's counsel claimed that John lacked personal knowledge of Nancy's claims and that he suffered from various mental ailments, including a poor memory. According to Nancy's counsel, the burden of taking John's deposition therefore outweighed any benefits. (*See* Doc. 71 at 2.) This discovery dispute never came before the Court, however, and Certegy never took John's deposition.

After the close of discovery, Nancy moved to certify a nationwide class of people who were "inaccurately portrayed" by Certegy as "higher risk check writer[s]." (Doc. 37 at 20.) Certegy opposed certification, (Doc. 39), and on the same day moved for summary judgment, (Doc. 40). Both motions remain pending. On April 25, 2025, Nancy's counsel informed the Court that Nancy had passed away. (Doc. 64 at 1.) A short time later, the parties requested—and this Court imposed—a forty-five-day

stay. (Doc 64; Text Order dated Apr. 28, 2025.) When it was lifted, John moved the Court to substitute him as the plaintiff. (Doc. 66 at 1.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 25(a) "governs the substitution of a party who has died." *Atkins v. City of Chicago*, 547 F.3d 869, 870 (7th Cir. 2008). Relevant here, the Rule provides that "[i]f a party dies and the claim is not extinguished, the court may order substitution of the proper party." Fed. R. Civ. P. 25(a)(1). The Rule elaborates that a motion to substitute "may be made by any party or by the decedent's successor or representative" within ninety days after "service of a statement noting the death." *Id.* That motion, "together with a notice of hearing, must be served" in accordance with Rules 4 and 5. Fed. R. Civ. P. 25(a)(3).

## DISCUSSION

John's motion—along with Certegy's opposition—presents four issues, two of which are procedural, and two of which are substantive. As to procedure: Certegy challenges the service and timing of John's motion. The Court finds that the motion was timely, that John and Certegy were the only parties entitled to notice of it, and that John's failure to obtain a hearing date is no reason to deny it. As to substance: Certegy argues that Nancy's FCRA claims were partially extinguished by her death. The Court concludes that John cannot seek punitive damages, but that Nancy's underlying FCRA claims survive. Finally, Certegy argues that John is not a proper substitute. But Certegy's arguments place more weight on Rule 25's "proper party" requirement than the Rule's text can bear. The Court will thus allow the substitution.

4

## I.    Service of John's Motion

The service of motions to substitute is governed by Rule 25(a)(3), which provides that "[a] motion to substitute, along with a notice of hearing, must be served on parties as provided in Rule 5, and on non-parties as provided in Rule 4." Fed. R. Civ. P. 25(a)(3). The Rule therefore identifies *who* must be served (parties and non-parties) and *what* they must be served with (the motion to substitute and a notice of hearing). Certegy does not dispute whether parties were served.[3] Instead, it argues that John failed to (1) serve non-parties, and (2) serve anyone—parties and non-parties alike—with a notice of hearing. But no court applies Rule 25's service provisions as rigidly as Certegy would have it.

First, the Court finds that Rule 25(a)(3) did not require John to serve any other non-parties. Although the Rule itself "does not specify any criteria for determining which nonparties must be served," *Atkins*, 547 F.3d at 871, the Seventh Circuit has explained that the only non-parties entitled to service are those "with a significant financial interest in the case," *id.* at 873. Here, John submitted an affidavit in support of his motion, explaining that he is both the executor and primary beneficiary of Nancy's estate. (Doc. 68 at 1.) Unquestionably, that role gives him a significant financial interest in the case. Certegy's argument, however, is more remote: It contends that Nancy may have *other*, secondary beneficiaries who are entitled to, but did not receive, notice of the motion and an opportunity to respond. But, as explained

---

[3] Nor could it: John's motion was filed electronically and thus automatically served on all existing parties. (*See* Doc. 66 at 6.)

below, the failure to serve hypothetical and unidentified beneficiaries does not warrant denying John's motion.

Second, because the Court finds that John and Certegy were the only persons entitled to service, John's failure to serve either himself or Certegy with a notice of hearing is not fatal to his motion. The purpose of serving the proposed substitute (John) is to ensure that the Court may exercise personal jurisdiction over that individual. By volunteering to assume Nancy's role in this case, however, John has consented to this Court's jurisdiction. Nor can Certegy claim prejudice from the lack of service. Although Rule 25 requires parties to serve a notice of hearing, it does not confer an absolute right to one. To the contrary, the Civil Local Rules vest the Court—not the litigants—with discretion to determine whether and when to hold a hearing.

## A.    Service on Non-Parties

Certegy first argues that third parties who may have a financial interest in the case—i.e., beneficiaries of Nancy's estate—are entitled to notice of John's motion. Because John did not serve them, the argument goes, it did not comply with Rule 25. But Certegy has not identified which non-parties—if any—are entitled to service. Given the statements in John's affidavit that he is the "executor" and "primary beneficiary" of Nancy's estate, (Doc. 68 at 1), it appears that he is the only non-party entitled to notice.

Again, the only non-parties entitled to notice of a substitution are those with a "significant financial interest" in the case. *Atkins*, 547 F.3d at 873. When a natural person dies and names beneficiaries in their will, the question whether those

6

beneficiaries have an interest in the case turns entirely on whether their interests in the decedent's estate have materialized—that is, whether the estate has been distributed. *Atkins* thus identifies two sets of non-parties entitled to service: (1) the executor or administrator, if the estate has not been distributed; and (2) successors or beneficiaries, if the estate has been distributed. *Id.* John's affidavit puts this case in the first category because Nancy's will has not yet been submitted to probate, and because John is her sole executor. (Doc. 68 at 1.) Under *Atkins*, John has the "biggest stake in the continuation of the case" and is therefore the person with whom Rule 25's service provisions are most concerned. *Atkins*, 547 F.3d at 873. Accordingly, John is the only person with a significant financial interest in the case and thus the only non-party entitled to notice.[4]

To avoid this result, Certegy cites two cases—decided by courts in this district—that departed from *Atkins*'s bright-line formula. But those courts confronted the rare scenario in which a plaintiff brought suit in a representative capacity rather than on their own behalf. *See Abellan v. HRDS Le Roy IL, LLC*, No. 1:16-cv-1037, 2020 WL 10355049, at *1 (C.D. Ill. June 19, 2020); *Carr v. Target Corp.*, No. 3:18-cv-3002, 2019 WL 952563, at *1 (C.D. Ill. Feb. 27, 2019). Indeed, *Abellan* and *Carr* were brought by trustees as representatives of a trust. When the trustees died, their

---

[4] John is also the "primary" beneficiary of Nancy's estate, (Doc. 68 at 1), which Certegy interprets to mean that Nancy's estate names other beneficiaries, some of whom may have a financial interest in the case. (Doc. 71 at 11.) But because Nancy's estate has not yet been administered, the relative interests of prospective beneficiaries are irrelevant. *See Atkins*, 547 F.3d at 873. Semantics aside, courts do not distinguish between a decedent's sole and primary beneficiary in determining who is a proper substitute. *See, e.g.*, *Hardy v. Kaszycki & Sons Contractors, Inc.*, 842 F. Supp. 713, 716 (S.D.N.Y. 1993) (explaining that the decedent's representative was a proper substitute under Rule 25 because she was "at least [the] primary" beneficiary of the estate). Thus, no other person has a superior claim to succeed Nancy in this case.

successor trustees moved to substitute themselves as parties. In doing so, however, the successors failed to notify the trust beneficiaries, who "still ha[d] an ongoing financial interest in the case" and were therefore entitled to notice. *Abellan*, 2020 WL 10355049, at *3.

*Abellan* and *Carr* are inapposite. Those suits were maintained on behalf of a trust, whose beneficiaries had a vested interest in the relief sought. In contrast, Nancy did not file this case in a representative capacity.[5] Unlike trust beneficiaries, the secondary beneficiaries of Nancy's will—assuming they exist—had no interest in this case before Nancy's passing, let alone a "significant" one. *Atkins*, 547 F.3d at 873. Absent a preexisting and thus "ongoing" financial interest in the case, these hypothetical beneficiaries need not be served with John's motion. *Abellan*, 2020 WL 10355049, at *3.

At its core, Certegy's argument speculates that there *might* be beneficiaries of Nancy's estate who *might* have a sufficient financial interest to warrant service under Rule 25(a)(3), and that John's motion does not affirmatively disprove the existence of those people. That is not enough, particularly in the face of John's affidavit that he is the executor of Nancy's estate. (Doc. 68 at 1.) As the executor of Nancy's estate, John is the only non-party entitled to notice under *Atkins*. The Court therefore declines Certegy's invitation to "deny the motion on this ground alone." (Doc. 71 at 11.)

---

[5] Certegy's opposition focuses heavily on the fact that this is a putative class action. The Court emphasizes that these putative class members do not yet have a financial interest in the case and are therefore not entitled to notice of John's motion. As of now, this case remains between a single plaintiff and a single defendant. *See Odell v. CVS Pharmacy, Inc.*, No. 1:22-cv-3318, 2023 WL 8527440, at *4 (N.D. Ill. Dec. 9, 2023) ("Unnamed putative class members are not parties to the action prior to class certification." (emphasis omitted)).

**B.    Notice of Hearing**

Along with the motion itself, Rule 25 requires service of "a notice of hearing." Fed. R. Civ. P. 25(a)(3). This language is the focus of Certegy's next challenge to John's motion. Certegy argues that John "has not obtained a hearing date from the Court, meaning he could not have served the beneficiaries with a notice of hearing as required by the Rule." (Doc. 71 at 11.) But the only beneficiary entitled to service, as discussed, is John. And by filing his motion without securing a hearing date, John has effectively waived his right to one. Nor can Certegy object that *it* was deprived of a hearing under Rule 25—the Rule does not give Certegy that right.

**1.    John's Waiver of Service**

At the outset, Certegy does not object to the fact that *it* was not served with a notice of hearing. (*See generally* Doc. 71.) Instead, Certegy invokes the rights of non-parties, arguing that *they* were not served with a notice of hearing. In all likelihood, Certegy does not have standing to assert their rights. Regardless, those beneficiaries lack a tangible financial interest in the case, *see supra* Section I.A, so they are not entitled to notice of a hearing. Because John is the only beneficiary entitled to notice, what remains of Certegy's argument—if anything—is that John failed to serve himself with his motion and a notice of hearing. But he can waive service of those things (on his own behalf, anyway), and the Court finds he did just that.

Consider why a Rule 25 motion would be served on a proposed substitute. Fundamentally, it ensures that courts can exercise personal jurisdiction over them. *See Ransom v. Brennan*, 437 F.2d 513, 517 (5th Cir. 1971). That is especially important when, for example, an attorney moves to substitute a person into a case

without informing that person or securing their consent. *See, e.g.*, *Atkins*, 547 F.3d at 871; *MWG Enters., LLC v. ETS Wound Care, LLC*, No. 4:19-cv-424, 2021 WL 5758440, at *1 (E.D. Mo. Dec. 3, 2021). But a court's jurisdiction over a proposed substitute is not in doubt when the proposed substitute files the motion themselves. By asking to join the case, the proposed substitute voluntarily assumes the decedent's role and consents to jurisdiction. *See MWG Enters.*, 2021 WL 5758440, at *1–2; *cf.* *Capriotti's Sandwich Shop, Inc. v. Taylor Fam. Holdings, Inc.*, 857 F. Supp. 2d 489, 501 (D. Del. 2012) (holding that parties consented to the jurisdiction of federal court in Delaware by filing suit in Delaware court). And by consenting to jurisdiction, a proposed substitute waives their right to service of the motion and an opportunity to object to it. *See MWG Enters.*, 2021 WL 5758440, at *1–2.

This principle is reflected in cases interpreting Rule 25. For example, courts find that they lack personal jurisdiction over a proposed substitute who has not been served with the Rule 25 motion or a notice of hearing.[6] By contrast, courts allow substitution where the proposed substitute—despite not having filed the motion themselves—consented to jurisdiction, whether expressly[7] or by conduct.[8]

Here, the proposed substitute—John—filed the substitution motion himself and volunteered to assume Nancy's role in the case. (*See* Doc. 66.) By doing so, John

---

[6] *See MWG Enters.*, 2021 WL 5758440, at *1–3 (E.D. Mo. Dec. 3, 2021) (noting that successor did not waive service); *see also Biglari v. Bd. of Regents ex rel. Univ. of Neb. Lincoln*, No. 4:22-cv-3268, 2024 WL 3722871, at *1–2 (D. Neb. Aug. 5, 2024) (explaining that successor had actual notice of lawsuit).

[7] *See United States v. Limetree Bay Terminals, LLC*, No. 1:21-cv-264, 2023 WL 172757, at *2 (D.V.I. Jan. 12, 2023) (stating successor had signed a stipulation to cooperate in substitution process).

[8] *See Hirsch v. Bruchhausen*, 284 F.2d 783, 786 (2nd Cir. 1960) (reasoning that successor had "continuously participated in the proceedings"); *see also United States v. Harold*, 423 F. Supp. 3d 410, 420–21 (E.D. Mich. 2019) (noting successor had notice of potential for litigation far in advance and "had ample notice and opportunity to present its case"), *aff'd*, 847 F. App'x 296 (6th Cir. 2021).

implicitly consented to this court's personal jurisdiction: He had actual notice of the motion and conveyed a willingness to be bound by this Court's judgment. *See* cases cited *supra* notes 6–7. And just as a plaintiff is not required to serve themselves with a summons and a copy of their own complaint, *see* Fed. R. Civ. P. 4(a)(1)(B), John need not resubmit to this Court's jurisdiction by serving his motion or a notice of hearing on himself. Requiring him to do so would be "an essentially useless formality." *Hirsch*, 284 F.3d at 786. Accordingly, John was not required to serve himself with the motion or a notice of hearing.

### 2.    John's Failure to Set a Hearing

To reiterate, Certegy objects that John "has not obtained a hearing date from the Court, meaning he could not have served the beneficiaries with a notice of hearing as required by the Rule." (Doc. 71 at 11.) But, as explained, John was the only beneficiary of Nancy's estate entitled to notice of the substitution. And by filing the motion, he waived service of it on himself—to the extent Rule 25 required it. The Court thus interprets this objection to mean that *Certegy* was deprived of a hearing on John's motion. Even on this reading, however, the Court disagrees.

For its part, Certegy is correct to say that Rule 25 requires motions to be served with a "notice of hearing." Fed. R. Civ. P. 25(a)(3). The Rule thus implies that a hearing on Rule 25 motions must take place, though no courts in the Seventh Circuit appear to have answered the question. Although precedent on this issue is lacking, it is beyond dispute that courts may adopt rules "for submitting and determining motions on briefs, without oral hearings," Fed. R. Civ. P. 78(b), so long as they are

11

consistent with the Federal Rules of Civil Procedure, Fed. R. Civ. P. 81(a)(1). This District has adopted just such a rule. Civil Local Rule 7(A)(1) provides:

> Any motion . . . may, *in the Court's discretion*, be . . . scheduled for oral argument, either at a specified time or on a Motion Day as suggested in Rule 78 of the Federal Rules of Civil Procedure; . . . or determined upon the pleadings and the motion papers without benefit of oral argument.

Civil LR 7.1(A)(1)(a), (d) (emphasis added). In practice, Local Rule 7.1(A)(1) and others of its kind "make[] irrelevant and meaningless the notice of hearing required by" Rule 6(c)(1)[9]—and, by extension, Rule 25(a)(3). *Rose Barge Line, Inc. v. Hicks*, 421 F.2d 163, 164 (8th Cir. 1970); *see also Morrow v. Topping*, 437 F.2d 1155, 1156 (9th Cir. 1971) (holding that failure to set hearing on motion to dismiss did not violate Rule 6(c)(1) and was "in full accordance with established procedure"); *Ameriway Corp. v. Chen*, No. 1:19-cv-9407, 2024 WL 1526175, at *2 n.3 (S.D.N.Y. Apr. 9, 2024) (noting that similar local rule's "more specific provisions control the matter" of notice of hearing). In other words, a party who files a Rule 25 motion need only provide interested parties with "actual notice of the motion and full opportunity to respond." *Rose Barge Line*, 421 F.2d at 164.

Nor is Local Rule 7.1(A)(1) inconsistent with Rule 25(a)(3)'s notice-of-hearing requirement. That is because it "is based upon the specific authority of Federal Rule 78, and is complementary to and not repugnant to the Federal Rules of Civil Procedure." *Rose Barge Line*, 421 F.2d at 164; *see also Proceedings of the Seminar on*

---

[9] Rule 6(c)(1) requires *all* written motions to be served with "notice of the hearing . . . at least 14 days before the time specified for the hearing." Fed. R. Civ. P. 6(c)(1). But because of court rules like Local Rule 7.1(A)(1), parties rarely file motions with a notice of hearing. (*See, e.g.*, Doc. 54 (motion for leave to file reply under Civil LR 7.1(B)(3) served without notice of hearing).)

*Procedures for Effective Judicial Administration*, 29 F.R.D. 191, 301–02 (1961) (contemplating similar local rules as being consistent with Rule 78(b)). Thus, Local Rule 7.1(A)(1) does not dispose of the hearing requirements under Rules 6(c)(1) and 25(a)(3)—it merely shifts the power to set a hearing from the parties to the court.

Here, John substantially complied with Rule 25(a)(3) in light of Local Rule 7.1(A)(1). Although he did not request a hearing on his motion, he was not required to, and Certegy had ample notice of and an opportunity to respond to it.[10] And Certegy capitalized on that opportunity by filing a lengthy opposition, (*see* Doc. 71), to which John replied, (*see* Doc. 77). In light of the parties' extensive briefing on this matter, the Court sees no reason to set it for a hearing.

Thus, John's failure to set this motion for and serve notice of a hearing (1) did not prejudice Certegy in opposing the motion, and (2) does not prevent John from serving as Nancy's substitute.

## II.   Timing of John's Motion

Certegy's second challenge relates to the timeliness of John's motion. A Rule 25 motion must be filed within ninety days "after service of a statement noting the death." Fed. R. Civ. P. 25(a)(1). The Seventh Circuit has explained that the ninety-day clock begins when a statement of death is properly served "on whoever is identified as the decedent's representative or successor." *Atkins*, 547 F.3d at 874; *see also Barlow v. Ground*, 39 F.3d 231, 233–34 (9th Cir. 1994) (noting that improper

---

[10] *See also* 12 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1955 (3d ed. 2025) ("[T]here is no constitutional right to present oral argument on a motion.").

service of statement of death does not trigger the ninety-day limitations period under Rule 25(a)(3)); *Giles v. Campbell*, 698 F.3d 153, 159 n.5 (3d Cir. 2012) (same).

Here, John's counsel electronically filed a statement of Nancy's death on April 25, 2025.[11] (Doc. 63.) That gave John until July 24, 2025, to file his motion to substitute. And since it was filed on July 16, 2025, it was timely. Certegy does not seem to dispute this. Instead, it argues that "[a]ny amended motion to substitute that attempts to cure the deficiencies discussed in this opposition would now be untimely." (Doc. 71 at 12.) In other words, John's motion to substitute *was* timely, but if the Court agrees with Certegy that the motion is defective in one way or another, any attempt to refile it would fall outside Rule 25's ninety-day window. That is true so far as it goes. But the Court's reasoning begins and ends with the fact that John's motion was timely filed—a fact which Certegy does not dispute. Thus, the Court will not deny it on this ground, either.[12]

## III.    Whether Nancy's Claims Are Extinguished

Procedure aside, the Court turns now to Certegy's substantive arguments. Certegy first argues that "Nancy's claims are partially extinguished" because John

---

[11] As Certegy correctly observes, the ninety-day clock would not have started running until the statement of death—not the motion to substitute—was served on John. *See* Fed. R. Civ. P. 25(a)(1); *see also Atkins*, 547 F.3d at 874. Since Nancy's attorneys now represent John, and since and they were served with the suggestion of death via CM/ECF, service on John's counsel likely constituted service on John himself. But even if the statement was served later, then the ninety-day clock would have started later. *See Cuoco v. Palisades Collection LLC*, No. 2:13-cv-6592, 2014 WL 956229, at *7 (D.N.J. Mar. 11, 2014) ("[E]ven if the original suggestion of death was defective, it simply means that the 90-day period did not begin to run."). In that case, John would have had more time to file the motion, not less.

[12] In any case, "[d]istrict courts have discretion to extend the Rule 25 ninety-day period for substitution." *Lizarazo v. Miami-Dade Corr. & Rehab. Dep't*, 878 F.3d 1008, 1011 (11th Cir. 2017); *see also* 7C Wright & Miller, *supra*, § 1955 ("The general provisions of Rule 6(b) now apply to motions to substitute."); *Zanowick v. Baxter Healthcare Corp.*, 850 F.3d 1090, 1096 (9th Cir. 2017) ("Rule 25(a)(1) permitted the district court to allow a late substitution if requested.").

14

cannot seek punitive damages if substituted as a party. (Doc. 71 at 12.) John responds that "the availability of a particular remedy is irrelevant to whether the *claim itself* survives," and the FCRA claims unquestionably do. (Doc. 77 at 4.) In a way, both parties are correct.

When the "right of action is federally created, federal law controls on the survival of the action." 7C Wright & Miller, *supra*, § 1954. The relevant federal law here, of course, is the FCRA. Yet the question whether FCRA claims are "extinguished" after the plaintiff's death is not one the Seventh Circuit has answered. In fact, it appears that *no* court of appeals has. Despite this lack of mandatory authority, district court opinions around the country are uniform. The consensus is that "claims for statutory damages under the FCRA survive" a party's death, but "claims for punitive damages do not." *Hopper v. Credit Assocs., LLC*, No. 2:20-cv-522, 2021 WL 5754732, at *3 (S.D. Ohio Dec. 3, 2021) (dismissing claims for punitive damages but allowing substitution to proceed).[13]

The reason for this vast agreement is because it is settled that "remedial claims survive" a party's death but "actions for penalties do not." *FTC v. Day Pacer LLC*, 689 F. Supp. 3d 609, 624 (N.D. Ill. 2023). Given that the "FCRA is a remedial statute designed to protect consumers," *Chaitoff v. Experian Info. Sols., Inc.*, 79 F.4th 800,

---

[13] *See also, e.g.*, *Biatiu v. Specialized Loan Servicing LLC*, No. 1:19-cv-822, 2019 WL 5448702, at *2 (S.D.N.Y. Oct. 24, 2019) ("Plaintiff's remaining claims under the FCRA—for actual damages—survive."); *Irvin-Jones v. Equifax Info. Servs. LLC*, No. 4:18-cv-3224, 2019 WL 4394684, at *3 (S.D. Tex. Sept. 13, 2019) (allowing substitution but holding that the plaintiff's "claims for punitive damages" under the FCRA do not survive her death); *Pena v. Experian Info. Sols., Inc.*, No. 8:22-cv-1115 , 2023 WL 4680807, at *2 (C.D. Cal. June 8, 2023) ("[Plaintiff's] FCRA cause of action survives him. However, to the extent he seeks punitive damages under the statute, this aspect of the claim is extinguished.").

816 (7th Cir. 2023), and that punitive damages "serve to punish and deter," *Irvin-Jones*, 2019 WL 4394684, at *2, it follows that claims for statutory and actual damages under the FCRA are "remedial" and survive, but claims for punitive damages are penal and do not.

Accordingly, to the extent Nancy's FCRA claims sought punitive damages, they are extinguished; to the extent they seek actual and statutory damages, they survive.

## IV.  Whether John Is a Proper Substitute

The final question is whether John is the right person to continue the case. In the mine-run of cases, the "proper party" to be substituted under Rule 25 is "the personal representative of the party who has died." *Tucker v. Mitchell-Lawshea*, No. 1:17-cv-5883, 2019 WL 1057384, at *2 (N.D. Ill. Mar. 6, 2019) (citing *Atkins*, 547 F.3d at 872). That person may be either the "executor or administrator of the decedent's estate" or, if the estate has been distributed, the decedent's heirs. *Atkins*, 547 F.3d at 872; *see also In re Baycol Prods. Litig.*, 616 F.3d 778, 784–85 (8th Cir. 2010) (explaining that a proper party under Rule 25 may be "(1) the primary beneficiary of an already distributed estate" or "(2) named in a will as the executor of the decedent's estate, even if the will is not probated" (citations omitted)).

John meets those criteria. His affidavit asserts that he is "the executor and primary beneficiary of Nancy's estate" and that "[n]o proceeding is pending in Illinois for the administration of Nancy's estate." (Doc. 68 at 2.) As the executor of Nancy's estate, John is therefore the proper party to take over this case, *see Atkins*, 547 F.3d

16

at 872, regardless whether Nancy's will has been submitted to probate, *see Baycol*, 616 F.3d at 784.

Certegy resists this conclusion in five ways. It argues that: (1) John has not shown that he is Nancy's representative; (2) John cannot represent Nancy's interests, (3) John is incompetent to be a litigant in federal court; (4) John cannot represent a class; and (5) regardless of (1) through (4), the Court should exercise its discretion to deny John's motion. (Doc. 71 at 13–19.) Certegy's arguments are misplaced.

### A.    John's Affidavit

First, Certegy argues that John's affidavit does not prove that he is in fact the executor of Nancy's estate. In support, Certegy cites *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921 (7th Cir. 2004), and *Fortier v. Ameritech Mobile Communications, Inc.*, 161 F.3d 1106 (7th Cir. 1998), for the proposition that John's affidavit is "not evidence of anything" because it is "self-serving." (Doc. 71 at 14.) But the affidavits in those cases were submitted at the summary judgment stage and in the face of conflicting evidence. *See Butts*, 387, F.3d at 925; *Fortier*, 161 F.3d at 1114. What is more, the authority cited by Certegy confirms that district courts may, in their discretion, consider "self-serving statements in affidavits," so long as they "are based on personal knowledge and set forth specific facts." *Butts*, 387 F.3d at 925 (citing *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004)). In fact, district courts *abuse* that discretion when they refuse to consider affidavits solely because they are self-serving. *See Buie*, 366 F.3d at 506 (reversing a district court's decision to ignore a self-serving affidavit when it was based on the affiant's personal knowledge).

17

Here, John's affidavit is unquestionably based on his own knowledge—no other person would be in a better position to speak to the terms of Nancy's will than the executor himself.[14] Nor does Certegy provide evidence of its own that would cast doubt on the credibility of John's affidavit. The Court therefore concludes that John's affidavit shows that he is the executor of Nancy's estate.

## B.    John's Ability to Represent Nancy's Interests

Second, Certegy argues that John is an improper substitute because he "cannot adequately represent Nancy's interests." (Doc. 71 at 15.) John replies that Rule 25 requires no such inquiry. The Court agrees.

Certegy invites the Court to graft onto Rule 25 a requirement that does not appear in the Rule's text or the caselaw interpreting it. To this end, Certegy cites dicta from an opinion of the D.C. Circuit: "It is axiomatic that Rule 25 limits properly substituted parties to those individuals who can adequately represent the interests of the deceased party." (Doc. 71 at 15 (quoting *Sinito v. U.S. Dep't of Just.*, 176 F.3d 512, 516 (D.C. Cir. 1999)).) But a closer look at the court's reasoning reveals that it undermines, rather than supports, Certegy's position. In *Sinito*, the D.C. Circuit held for the first time that Freedom of Information Act ("FOIA") claims survive a party's death. 176 F.3d at 516. The government argued that the court's holding would allow "any person" to step into the decedent's shoes and thus saddle the judiciary with

---

[14] Moreover, documentary evidence of John's status as executor is not required—courts routinely accept affidavits as proof of status. *See Graham v. Henderson*, 224 F.R.D. 59, 65 (N.D.N.Y. 2004) (accepting affidavit "that there was in fact an estate for [decedent]; that [administrator] was Voluntary Administrator of said estate; and, that she was also the primary distributee of the estate" as sufficient proof); *see also Hardy*, 842 F. Supp. at 716 ("Although [proposed substitute] has not been formally appointed as the representative of the [e]state, several courts interpreting Fed. R. Civ. P. 25(a) have held that such formality is not required in certain situations.").

18

never-ending FOIA lawsuits. *Id.* To allay the government's concern, the court explained that Rule 25 limits proper substitutes to a decedent's "successors or representatives." *Id.* This limitation, the court said, ensures that only people who share the decedent's interests could take over a case. *See id.*

Certegy's argument puts the cart before the horse. In its view, the principle that a substitute must share the decedent's interests *limits* which of the decedent's representatives may invoke Rule 25 (i.e., only those representatives who share the decedent's interests). *Sinito* did not fashion that atextual limitation. Instead, it explained *why* Rule 25 allows only a decedent's successors or representatives to substitute into the case: to ensure that a substitute will be someone who is legally required to act in the decedent's best interest, as most legal representatives are. More recently, the Eighth Circuit adopted this reading: "Because the purpose of Rule 25(a)(1) is to *protect the estate of the decedent*, district courts must ensure only 'those individuals who can adequately represent the interests of deceased party' are substituted under the Rule." *Baycol*, 616 F.3d at 788 (8th Cir. 2010) (emphasis added) (quoting *Sinito*, 176 F.3d at 516). And no one is better suited to protect the interests of the decedent's estate than its executor because, as the Seventh Circuit has recognized, Illinois law imposes fiduciary duties on executors to carry out the terms of the instrument that appointed them. *See Hamilton v. Nielsen*, 678 F.3d 709, 711 (7th Cir. 1982). Indeed, *Sinito* itself expresses a preference that substitutes be the decedent's executors. *See Sinito*, 176 F.3d at 516 ("[A] proper party need not *necessarily* be the appointed executor . . . ." (emphasis added)).

19

Rule 25's text reinforces this conclusion. By allowing only a decedent's "successors or representatives" to move for substitution, the Rule contemplates that those people would be proper substitutes. Fed. R. Civ. P. 25(a)(1); *see also Robertson v. Wood*, 500 F. Supp. 854, 859 (S.D. Ill. 1980) ("Rule 25(a) clearly contemplates appointment of legal representatives, such as an executor or an administrator."); *Hunter v. Kennedy*, No. 3:17-cv-7, 2021 WL 2682043, at *3 (M.D. Pa. June 30, 2021) ("Rule 25(a)'s use of the term 'successor' necessarily implies that there is some [part of the] decedent's estate or interest which remains and as to which the substituted party has succeeded.").[15]

In short, Rule 25 does not empower courts to conduct a freewheeling analysis of the relative "interests" involved before allowing substitution. As *Sinito* and *Baycol* clarify, limiting substitutes to a decedent's "successors or representatives" adequately ensures that the decedent's interests are protected. Because the Court finds that John is the executor of Nancy's estate, *see supra* Section IV.A, his interests are aligned with Nancy's so far as Rule 25 is concerned.[16]

---

[15] Some courts look to state law to determine whether the proposed substitute is the decedent's "personal representative" and therefore the proper party. *See, e.g.*, *Baycol*, 616 F.3d at 788; *Valle v. Singer*, No. 3:11-cv-700, 2011 WL 13186681, at *8 (M.D. Fla. Dec. 7, 2011) (denying substitution motion in § 1983 action because proposed substitute failed to demonstrate that he was decedent's "personal representative" under Florida law); *Graham v. Henderson*, 224 F.R.D. 59, 64 (N.D.N.Y. 2004) (same under New York law). That would not change the Court's analysis, however, because Illinois law defines "personal representative" as a person's "executor, administrator, administrator to collect, standby guardian, guardian and temporary guardian." 755 ILCS 5/1-2.15. John would therefore qualify as Nancy's personal representative. (*See* Doc. 66-1 at 1 (stating under penalty of perjury that John is the executor of Nancy's estate).)

[16] In a related argument, Certegy observes that John lacks personal knowledge of the claims. But Rule 25 does not require that the substitute have personal knowledge of the lawsuit. *See Graham*, 224 F.R.D. at 66 (rejecting argument that proposed substitute "has not been involved in the litigation thus far and therefore should not be substituted"). This makes sense: A person's legal representative will almost never be the one who suffered the injury or brought the claim.

### C.    John's Capacity & Competence

Third, Certegy argues that John is not a proper substitute because his physical and mental ailments prevent him from litigating the case. Certegy's arguments on this score consist primarily of criticizing opposing counsel's tactics rather than citing relevant legal authority. Regardless, the Court disagrees.

Rule 25(a) does not speak to competence, nor does it suggest that courts must conduct a threshold inquiry into a proposed substitute's competence before allowing substitution. That said, the practical effect of substitution is that "the proper party steps into the shoes of the decedent." *Harco Nat'l Ins. Co. v. Ackerman*, No. 2:20-cv-1208, 2020 WL 6785934, at *1 (D. Nev. Nov. 17, 2020). And under Rule 17, all civil litigants must possess both capacity and competence before maintaining a lawsuit in federal court. *See* Fed. R. Civ. P. 17(b)–(c). It follows that a substitute—like any other party—must be competent.

Because Certegy does not cite Rule 17, it is unclear whether Certegy opposes John's substitution under Rule 17(b) (capacity) or Rule 17(c) (competence). In any event, both rules impose an exceedingly high evidentiary burden on those challenging another's ability to sue. Certegy's evidence would fall short under either of them.

### 1.    John's Capacity Under Rule 17(b)

A person may not bring or defend an action in federal court unless they have the capacity to do so. *Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 382 (2d Cir. 2021). A person's capacity, in turn, is determined by the law of their domicile. Fed. R. Civ. P. 17(b)(1). John's capacity to sue thus turns on Illinois law.

21

In Illinois, a person lacks capacity if he cannot "manage his person or estate"—whether "because of mental deterioration or physical incapacity" or because of "mental illness or developmental disability." 755 ILCS 5/11a-2(a)–(b). Here, Certegy alleges that John may possess "physical and mental infirmities" that would prevent him from "consult[ing] with his lawyer with a reasonable degree of rational understanding" and from "understand[ing] the nature of the proceedings." (Doc. 71 at 17 (quoting *United States v. 30.64 Acres of Land*, 795 F.2d 796, 805 (9th Cir. 1986)).) But Illinois probate courts—not this one—have the power to adjudicate someone's capacity. *See* 755 ILCS 5/11a-7. Simply put, "there is no bar to suit against even an insane person" absent (1) an adjudication of incompetence by an Illinois probate court, and (2) the appointment of a guardian. *Freiders v. Dayton*, 378 N.E.2d 1191, 1198 (Ill. App. Ct. 1978); *see also* 755 ILCS 5/11a-3, -14, -18(c).

The lack of evidence that John has been declared incompetent by an Illinois court thus ends the Rule 17(b)(1) inquiry. *Accord Pass v. Emps. Ins. Co.*, No. 3:13-cv-16, 2014 WL 5511082, at *2 (N.D. Miss. Oct. 31, 2014) (rejecting argument that plaintiff was incompetent because there was no evidence that he had "been declared legally incompetent in a court proceeding"). Without more, this Court cannot find that John lacks capacity to maintain suit, so it will not deny his motion on that ground.

### 2.    John's Competence Under Rule 17(c)

Rule 17(c) also restricts who may be a party in federal court. If a party is incompetent, the Rule requires that a guardian, conservator, or other representative be appointed to sue on their behalf. Fed. R. Civ. P. 17(c)(1). Because Certegy has

raised competence arguments on John's Rule 25(a) motion, a brief discussion of the interplay between Rules 17(c) and 25 is in order.

To begin with, Rule 25 treats death and incompetence differently. Rule 25(b) allows courts to appoint a representative for an incompetent party and is thus Rule 17(c)'s procedural analogue. Rule 25(a) has no such analogue. Put another way, Rule 17(c) deals with incompetent *parties*, so its application to Rule 25(a)—which concerns only non-parties—is unclear, and precedent on the interplay between the two is sparce. That said, at least one court has discussed the competence of a non-party under Rule 25(a) before allowing that non-party's substitution. *See Todd v. A Team Sec., Inc.*, No. 1:20-cv-1568, 2021 WL 11636881 (E.D.N.Y. Sept. 9, 2021). The Court therefore indulges, but for the reasons below rejects, Certegy's competence arguments.[17]

In arguing that John is incompetent, Certegy implies that he bears the burden of proof to demonstrate otherwise. (*See* Doc. 71 at 9–10.) The opposite is true: "[A]ll persons are presumed to be competent' and . . . the 'burden of proof of incompetency rests with the party asserting it.'" *Scannavino v. Fla. Dep't of Corr.*, 242 F.R.D. 662, 664 (M.D. Fla. 2007) (quoting *Weeks v. Jones*, 52 F.3d 1559, 1569 (11th Cir. 1995)).

---

[17] Substitution under Rules 17(c) and 25(b) implicates the allegedly incompetent litigant's due process rights, whereas substitution under Rule 25(a) does not. The former procedure implicates "a protected liberty interest in pursuing the suit as a principal" because (1) a declaration of incompetence impugns the litigant's reputation, and (2) appointment of a representative deprives him of his preexisting power to control the lawsuit. *Thomas v. Humfield*, 916 F.2d 1032, 1033 (5th Cir. 1990) (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971)). The latter procedure differs because the proposed Rule 25(a) substitute lacks legal, preexisting power to control the suit. *See Paul v. Davis*, 424 U.S. 693, 712 (1976) (holding that injury to reputation alone does not implicate due process liberty interest). Accordingly, while Rule 25(a) does not *require* the Court to consider John's competence, the Court is not prohibited from doing so—even without a hearing.

23

The party asserting incompetence must therefore demonstrate that "the litigant is 'mentally competent to understand the nature and effect of the litigation.'" *Id.* (quoting *Bodnar v. Bodnar*, 441 F.2d 1103, 1104 (5th Cir. 1971)).

Three examples illustrate this standard. In *Bah v. Washington Metropolitan Area Transit Authority*, the court held that an allegation that a party was "seriously ill, without more," was "insufficient to establish" incompetence. No. 8:14-cv-2803, 2015 WL 6460082, at *2 (D. Md. Oct. 23, 2015). The Court explained that there was "no evidence that Plaintiff has been declared legally incompetent in a court proceeding," nor "any medical evidence regarding his mental and physical capacities." *Id.* Similarly, in *McBroom v. Potter*, the court found no incompetence because there was "scant medical information" that the plaintiff was suffering from physical and emotional problems. No. 2:06-cv-767, 2007 WL 1424530, at *2 (M.D. Ala. May 14, 2007). Finally, in *Todd v. A Team Security, Inc.*, the plaintiff died and his father moved to substitute into the case under Rule 25. 2021 WL 11636881, at *1. Like Certegy, the defendant objected on the ground that the father was incompetent, citing three pages of the plaintiff's deposition. *Id.* at *6. The court disagreed, explaining that the "fleeting and vague reference" to the father failed to establish that he was incompetent. *Id.* Accordingly, the court permitted the substitution. *Id.*

Certegy has not satisfied its burden to show that John is incompetent under Rule 17(c). Certegy claims that "Nancy . . . and her counsel confirmed that John cannot represent Nancy's interests because he is too infirm." (Doc. 71 at 16.) To substantiate that claim, Certegy attaches two pages of Nancy's deposition transcript

24

in which she indicated that, although John could understand and respond to questions, he could not participate in a deposition because he lacked knowledge of the case. (*See* Doc. 71-3 at 20–21.) Certegy also draws the Court's attention to an email exchange with John's counsel, in which the parties dispute whether John has a diagnosable medical disorder. (*See* Doc. 71-2 at 15–16.) This is well short of the evidence demanded by the courts in *Bah*, *McBroom*, and *Todd*. Certegy does not allege that John has been declared incompetent by a court. Nor does Nancy's deposition or the parties' email exchange amount to "medical evidence" that would persuade the Court that John cannot "understand the nature and effect of the litigation." *Bodnar*, 441 F.3d at 1104. Likewise, Certegy's reliance on two pages of Nancy's deposition mirrors the insufficient evidentiary showing in *Todd*. 2021 WL 11636881, at *6 ("[T]he fleeting and vague reference to [the proposed substitute] is the kind of remark that many families might make about an elder member without meaning to imply mental incompetence."). In short, Certegy relies on "scant medical information" that is inadequate to demonstrate John's incompetence. *McBroom*, 2007 WL 1424530, at *2.

Nonetheless, asking Certegy to produce evidence about John's medical history at this stage would be unreasonable, particularly where it has been unable to depose him. (*See* Doc. 71 at 21 ("Certegy has never had the opportunity to explore John's competence.").) As John himself concedes, Nancy's death changed the trajectory of this case. (*See* Doc. 77 at 7 ("Plaintiff does not oppose narrow discovery regarding [John's] adequacy as a class representative . . . .").) When John becomes the plaintiff,

Certegy may request to depose him and conduct discovery into his competence. If Certegy believes that it can meet its burden to demonstrate that John is incompetent—or needs additional discovery to do so—it will be free to bring that to the Court's attention in ordinary course and on a proper motion.

### D.     John's Ability to Represent a Class

Certegy also argues that John's lack of personal knowledge of the case make him an inadequate class representative under Rule 23(a)(4). John objects that Certegy "seeks to turn this motion to substitute into an opportunity to reargue the pending motion for class certification." (Doc. 77 at 7.) The Court will not entertain Certegy's Rule 23 arguments at this stage. *Cf. Robbins*, 2023 WL 4205773, at *3 (refusing to consider adequacy of proposed Rule 25(b) substitute until the class-certification stage). Of course, Certegy is correct that John's substitution alters the Rule 23 analysis. But John's motion would be an improper vehicle to litigate that issue. The parties will therefore be given the opportunity to present their arguments at the appropriate time.

### E.     The Court's Discretion

Finally, Certegy asks the Court to deny John's motion because granting it would be "fundamentally unfair." (Doc. 71 at 21.) True, Rule 25 by its terms confers discretion to grant or deny motions to substitute. *See* Fed. R. Civ. P. 25(a)(1) ("[T]he court *may* order substitution of the proper party." (emphasis added)). But denying John's motion would serve neither Rule 25's purpose nor the Federal Rules of Civil Procedure generally, which collectively aim to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

As amended, Rule 25's rather modest goal is "to dispel unwarranted rigidity and allow more flexibility in substitution." *McSurely v. McClellan*, 753 F.2d 88, 98 (D.C. Cir. 1985). It is therefore "difficult to imagine a case where discretion might properly be exercised to deny a motion to substitute for a deceased plaintiff made within the [R]ule's time limits." *Saylor v. Bastedo*, 623 F.2d 230, 237 (2d Cir. 1980). Certegy says that this is one of those hard-to-imagine cases. (*See* Doc. 71 at 20–21.) On its telling, John's counsel has changed its tune about John's role in the lawsuit after Nancy's death. It also argues that trial would be impractical because John lacks personal knowledge of Nancy's check transactions and of the case generally. (*See* Doc. 71-3 at 6.)

Certegy's arguments are better suited for class certification, evidentiary objections at or before trial, or perhaps a motion to compel. As already explained, John's motion was timely and properly served, and it satisfies Rule 25's substantive requirements. Certegy's final request is therefore a plea to cast the Rule aside because, in its view, applying it to this case would be unfair. The fairness concerns, however, are equally great on the other side. The practical effect of denying John's motion would be to deprive him of the opportunity to pursue claims that the Court has already determined—and that Certegy admits—survived Nancy's death and passed to her estate. The Court is aware of no legal principle that sanctions that result.

## CONCLUSION

IT IS THEREFORE ORDERED that John's Motion to Substitute, (Doc. 66), is granted. If the parties believe that John's substitution calls for the reopening of

27

discovery or supplemental briefing on the motions already pending in this case, they may bring those matters to the Court's attention via the proper motion. *See* Fed. R. Civ. P. 16(b)(4); Civil LR 6.1.

*So ordered.*

Entered this 24th day of October 2025.

s/ Ronald L. Hanna
_____
Ronald L. Hanna
United States Magistrate Judge
